IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-165-FL

| | | |
|---|---|---|
| LISA BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SON'S QUALITY FOOD | ) | |
| and THOMAS R. PEACOCK, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court upon defendants' motion for summary judgment or, in the alternative, motion to dismiss pursuant to Rule 56 and Rule 12(b)(6) of the Federal Rules of Civil Procedure (DE # 12). Plaintiff responded in opposition, and defendants timely replied. In this posture, the issues raised are ripe for consideration. For the reasons that follow, defendants' motion is granted.

## STATEMENT OF THE CASE

On September 7, 2010, after receiving leave to proceed *in forma pauperis*, plaintiff filed *pro se* complaint alleging wrongful termination and failure to promote due to racial discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (2006). Defendants filed answer on September 29, 2010, denying liability and asserting failure to state a claim as an affirmative defense.

On March 30, 2011, after the close of discovery, defendants filed this motion for summary judgment or, in the alternative, motion to dismiss. Their motion was supported with affidavits and

other documentary evidence. The Clerk of Court issued a Roseboro[1] notice to plaintiff, and she responded in opposition on April 25, 2011. Defendants timely replied.

## STATEMENT OF THE UNDISPUTED FACTS

Defendant Son's Quality Food ("Son's Quality Food") provides contract food service workers to the United States military. Through a subcontractor, Son's Quality Food provides food service workers at Camp Geiger and Camp Johnson, which are a part of the Camp Lejeune Marine Corps base in Jacksonville, North Carolina. Virginia Wilson ("Wilson"), a project manager with Son's Quality Food and liaison to the subcontractor, is responsible for hiring, firing, and disciplining the food service employees at the base. However, the day-to-day supervision of the employees is provided by the subcontractor's food service managers.

Plaintiff, an African-American woman, was hired to be a mess attendant for Son's Quality Food at Camp Geiger on March 17, 2007. Plaintiff's job required her to bus tables, serve food, clean the mess hall, and wash dishes. As with all other food service employees employed by Son's Quality Food at that installation, plaintiff was represented pursuant to a union contract with the Industrial, Technical and Professional Employees Union, OPEIU Local 4837, AFL-CIO (the "Union").

While employed with Son's Quality Food, plaintiff received a number of disciplinary write-ups, almost all of which were initiated by the food service supervisors employed by the subcontractor. Wilson's affidavit, and the documents attached thereto, show that plaintiff received twelve (12) disciplinary infractions from August 7, 2007, to June 1, 2009, for actions such as disruptiveness, excessive tardiness and absenteeism, taking food without paying for it, and refusing to follow instructions.

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

2

Case 7:10-cv-00165-FL   Document 24   Filed 05/12/11   Page 2 of 7

In April 2009, there was an opening at Camp Geiger for temporary alternate lead mess attendant after the incumbent was injured in an accident. The position was advertised on a bulletin board with a sign-up sheet. Four individuals applied, although plaintiff did not. One of the requirements for the position was that the employee have high standards of work performance. Dorothy Bloom ("Bloom"), a Hispanic woman, was selected for the position. Bloom served as an alternate lead mess attendant until other arrangements could be made.

Based on plaintiff's history of infractions and after speaking with food service supervisors and the Union shop steward, Wilson terminated plaintiff's employment in June 2009 following a final infraction that Wilson describes as plaintiff "walking off the job." Contesting her dismissal, plaintiff filed a grievance with the Union. The Union began an investigation on June 5, 2009, but informed plaintiff in a letter dated June 18, 2009, that it had fully investigated her grievance and was not going to proceed further. Plaintiff then filed complaint with the Equal Employment Opportunity Commission ("EEOC"), which also declined to proceed beyond an initial review.

## DISCUSSION

A.  Standard of Review

The court will rely on the documentary evidence submitted in support of defendants' dispositive motion, which it analyzes under the summary judgment rubric. See Fed. R. Civ. P. 12(d). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary

3

judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

B.  Analysis

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a)(1). There are two methods by which a plaintiff may establish a claim for discrimination sufficient to avoid summary judgment:

> First, [she] may present direct evidence of his superiors' discriminatory intent. Second, [she] may attempt to satisfy the test specified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which allows [her] to raise an inference of discriminatory intent by showing that [she] was treated worse than similarly situated employees of other races. Defendants are then entitled to respond by presenting a legitimate, nondiscriminatory reason for their actions. The burden would finally shift back to [plaintiff] to demonstrate that this reason was a pretext for discrimination.

Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2005) (internal citations omitted).

The court begins by noting that individual supervisors, including defendant Thomas R. Peacock ("Peacock"), are not liable under Title VII. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998). Accordingly, regardless of whether plaintiff can establish direct evidence of discriminatory intent or meet the burden-shifting test of McDonell Douglas, Peacock cannot be held liable in this action, which is brought exclusively pursuant to Title VII. Accordingly, defendants' motion for summary judgment must granted as to Peacock.

4

Upon consideration of the undisputed evidence before it, the court concludes that summary judgment is also appropriate with respect to Son's Quality Food. Plaintiff has put forward no direct evidence of discrimination, and must therefore rely on the McDonnell Douglas framework. With respect to her wrongful termination claim, that requires her to demonstrate that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). As the myriad disciplinary infractions incurred over the two-year period of her employment amply demonstrate, plaintiff cannot demonstrate "satisfactory job performance."[2]

With respect to her failure to promote claim, plaintiff "must present evidence that (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 544-45 (4th Cir. 2005) (internal quotation marks and alterations omitted). Once again, the undisputed evidence of plaintiff's disciplinary infractions dooms any argument that she was qualified for the position of alternate lead mess attendant, which required applicants to have high standards of work performance. Even more fundamentally, however, plaintiff's claim fails where she has presented no evidence that she applied for the position in question. Instead, plaintiff appears to want to vindicate the rights of

---

[2] Plaintiff's infractions are also a "a legitimate, nondiscriminatory reason" for defendants' allegedly discriminatory actions, as to which no evidence of pretext has been shown. The court also notes that the evidence indicates that plaintiff's position was filled by another African-American woman following her termination, thereby precluding the necessary showing at step four of the McDonnell Douglas test.

5

other African-American employees who were not selected for the position, but she lacks standing to do so. See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[A] plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties.").

The court notes that plaintiff has expanded her Title VII claim in her response opposing summary judgment to include allegations that defendants failed to make an appropriate religious accommodation. These allegations do not appear in plaintiff's complaint or her EEOC charge, and may not be used to defeat summary judgment. See Jones v. Calvert Grp., Inc., 551 F.3d 297, 300 (4th Cir. 2009); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002). The court also notes that plaintiff has no more produced evidence supporting liability for religious discrimination than she has for her claims of racial discrimination.

Finally, as suggested by defendants where *pro se* pleadings are to be liberally construed, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), the court has analyzed the undisputed evidence before it with an eye towards a possible Title VII retaliation claim. The court concludes that such a claim is precluded where plaintiff has not identified any protected activity or causal connection between such activity and her termination. See Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). The court reads the phrases "harassment" and "defamation of character" as allegations of injury or conduct supporting her Title VII claim, rather than independent state law claims (for which no evidence has been produced by plaintiff).

In summary, the court holds that defendant Peacock may not be liable for any Title VII violations and that the undisputed evidence before the court establishes as a matter of law that plaintiff's Title VII claims fail on their merits as to defendant Son's Quality Foods. Accordingly, defendants' motion for summary judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 12) is GRANTED. The Clerk of Court is directed to issue judgment in favor of defendants and to close this case.

SO ORDERED, this the 11th day of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Court Judge